# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **DANA W. WEBSTER,** | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| vs. | **Case No. 2:13CV95DAK** |
| **ROBERT A. McDONALD, Secretary of the Department of Veterans Affairs** | **Judge Dale A. Kimball** |
| Defendants. | |

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On June 1, 2016, the court held a hearing on the motion. At the hearing, Plaintiff was represented by Loren M. Lambert, and Defendant was represented by Jeffrey E. Nelson. The court has carefully considered the materials submitted by the parties, as well as the facts and law relevant to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Dana Webster began working as a police officer at the Salt Lake City Veterans Affairs Medical Center ("VAMC") in January 2002. Webster is currently employed as a police officer at the Puget Sound VA Health Care System in Seattle, Washington.

Webster brought the present action because he was denied several promotions while employed at the Salt Lake VAMC. In 2009, Webster applied for but was not selected for eight promotion opportunities. Webster was also not selected to attend a firearms training course and

was not selected as the police department's firearms instructor.

Webster alleges that the Salt Lake VAMC's decisions were the result of age discrimination and/or retaliation for his involvement as a witness in a fellow officer's discrimination matter. Webster also alleges that he was subjected to a hostile work environment while he was employed at the Salt Lake VAMC.

Defendant does not dispute that Webster was over 40 years of age when he applied for the promotions, he met the qualifications for the positions, he was not selected for the promotions, and younger applicants were selected. Defendant also does not dispute that Webster was interviewed in connection with a coworker's EEO complaint on October 29, 2009, and he was later denied promotions on December 31, 2009, and February 17, 2010.

Police Chief Albert Bell was the deciding official for the promotions that Webster applied for in 2009. Bell began his employment with the Salt Lake VAMC in March 2009, having previously worked at Hill Air Force base. Bell testified that he evaluated candidates not only for competence as a police officer but also the ability to interact effectively with their subordinates. For the selection of each position, Bell selected a three-member panel to interview the candidates for the promotions. Bell gave each interviewer a printed set of 15 interview questions designed to elicit information about the candidates' experience and skills as law enforcement officers and their potential ability to lead and motivate other officers. The panel members asked each candidate the same 15 questions and independently rated the candidate's answer to each question on a scale of 0-5. The scores were then totaled and each candidate received a score up to a maximum of 225 (75 from each of the three interviewers).

The interview panel for Promotion No. 2069-2010 consisted of Captain Ronald Beard and Lieutenant Wayne Vouvalis from the VA police department, and James Stritikus, the

VAMC's Emergency Management Coordinator. The panel interviewed eight candidates and unanimously rated Horald Hess the highest, with a total score of 204. Webster rated second with a total score of 157.

The interview panel for Promotion No. 2131-2010 consisted of Captain Beard, Lieutenant Vouvalis, and VAMC Patient Advocate Stacey Parsons. The panel interviewed only the four candidates who had qualified for the position under the Veterans Employment Opportunities Act ("VEOA"). Webster was not interviewed for this promotion because he was not a VEOA candidate for the position. When interviewing for a promotion, the VA creates a certificate including the applicants who qualify in each eligibility category. The selecting official is not required to interview all candidates, but if he decides to interview any applicant on a particular certificate, he is required to interview all the candidates listed on that certificate. Bell determined to interview the four candidates listed on the VEOA certificate. The panel unanimously rated Michael Knowles the highest with a total score of 206.

Bell adopted the recommendations of the interview panels for Promotion Nos. 2069-2010 and 2131-210 and selected Horald Hess and Michael Knowles, who had received the highest ratings by the interview panels.

Shortly after Bell began working at the Salt Lake VAMC, Bell told Webster that he had the authority from VAMC Associate Director Robin Korogi to rid the department of all undesirable officers through any means necessary. Although Bell did not mention age, Webster testified that another officer, Tony Auriemma told Webster that Bell wanted to replace all the older officers. Auriemma testified that Bell used the term "older people" in reference to the people who predated his arrival, regardless of age. Another officer, Steven Anderson, also heard Bell refer to the "old guys," but he said he was sure that he meant the officers who were still

3

there, not age. Anderson said that his perception was that all of the officers, but Webster, interpreted it that way.

At Webster's deposition, he claimed that in October 2009 he overheard Bell tell a visitor from Hill Air Force Base that "he was going to promote some more of his people as soon as he got rid of some of the older officers." Webster could not identify the visitor and failed to mention this statement in his EEO complaint, his EEO affidavit, his Complaint in this case, or in response to interrogatories in this case. Bell denies that he said it.

There is no evidence demonstrating that Bell actually removed older officers from the department. Only two officers were terminated during Bell's one-year tenure at the VAMC. The first officer was 29 years of age. The second officer was hired by Bell in April 2009, when the officer was 48, and resigned in lieu of termination in December 209, at the age of 49.

In relation to the selection of candidates for promotion, James Stritikus, who participated in the interviews for Promotion No. 2069-2010, testified that the interviewers did not discuss the applicants' ages and that he did not take age into consideration in his evaluation of the applicants. Stacey Parsons, who participated in the interviews for Promotion No. 2131-2010, testified that the interviewers did not discuss the applicants' ages and that the applicants' ages did not influence her rating of their qualifications.

Stritikus and Parsons also testified that there was no discussion of Webster's participation in another officer's EEO Complaint during the interviews for the promotions. Stritikus testified that he did not know that Webster had participated in an EEO matter. Bell also testified that he was unaware that Webster had been interviewed on the other officer's EEO complaint. However, Webster disputes Bell's testimony, alleging that Bell should have known who was interviewed in relation to the EEO matter.

On his own claim, Webster contacted an Equal Employment Opportunity Counselor regarding his complaints of discrimination and retaliation on January 29, 2010.  Webster filed an administrative Complaint of Employment Discrimination on March 11, 2010, in which he alleged that he had been discriminated against based on age, gender, and retaliation, and that he had been subjected to a hostile work environment.  After further communication with Webster, the Regional EEO Officer accepted three claims for investigation and processing:  (1) whether Webster was treated in disparate manner based on age, sex, or retaliation when he was not selected for the position of Supervisory Police Officer on December 24, 2009; (2) whether Webster was treated in a disparate manner based on age, sex, or retaliation when he was not selected for Lead Police Officer on December 31, 2009, and (3) whether Webster was subjected to a hostile work environment.  Webster has since dropped his claim for sex discrimination.

The VA's Office of Resolution Management investigated Webster's claims and produced a report of the investigation.  The parties conducted discovery, including written discovery and depositions.  After completing discovery, the parties filed cross motions for summary judgment.  The Federal Administrative Law Judge Daniel E. Leach issued a Decision Without Hearing, granting the VA's motion and denying Webster's motion.  ALJ Leach concluded that "complainant is unable to establish that because of his age (DOB 1955) or prior EEO activity" that he suffered discrimination as alleged in his complaint.

## DISCUSSION

### Defendant's Motion for Summary Judgment

**1.  Timeliness of Claims**

A federal government employee must timely exhaust administrative remedies before bringing suit under the ADEA or Title VII.  *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001).

This includes the requirement that the employee consult an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).

### A. Discrete Claims

Each discrete incident of alleged discrimination, such as a failure to promote, is a separate "unlawful employment practice" for which administrative remedies must be exhausted.  *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).  Because Webster first consulted an EEO Counselor on January 29, 2010, the 45-day period began on December 15, 2009, and ended on January 29, 2010.  Although Webster applied for eight promotions during 2009, only two are administratively exhausted and properly before the court.

There is no evidence to support an extension of the 45-day time limit provided in 29 C.F.R. § 1614.105(a)(2) for not being notified or aware of the time limit.  Defendant has submitted evidence, including Webster's deposition testimony and Webster's employment records, demonstrating that Webster received several trainings specifically on how and when to make an employment claim.

Moreover, contrary to Webster's assertion, the Regional EEO officer did not make a finding that Webster's claims were timely.  The Regional EEO officer determined that only two of Webster's promotion claims and his hostile environment claims could be investigated and processed because his other claims were untimely.  The VA did not waive its defense for failure to exhaust administrative remedies by accepting three of Webster's claims for investigation.

There is also no basis for excusing Webster from the 45-day time limit based on alleged threats that he should not make outside complaints.  There is no authority for this proposition and no evidence of any alleged threats.  The only evidence in the record suggests that Webster made

several complaints while employed at the VAMC from 2003 to 2010. These serial complaints provide no inference that Webster feared the consequences of filing claims.

In addition, Webster's only protected EEO activity occurred on October 29, 2009, when he provided information in connection with Officer Zumwalt's EEO proceeding. Webster claims thirteen protected activities beginning in 2003, but none of these other activities related to EEO claims. Webster's retaliation claim, therefore, can only be based on alleged retaliation following his participation in the EEO matter.

Webster argues that he participated in the other officer's EEO matter before October 29, 2009, but the undisputed facts do not support his claim. Webster was not a participant in the other officer's EEO complaint when it was filed merely because he may have become a witness. The officer's EEO complaint does not contain a list of witnesses and Webster is not mentioned.

### B. Hostile Work Environment Claim

In contrast to the discrete employment decisions that occur at a defined point in time, a hostile work environment occurs over a period of time during which the claimant is subjected to a workplace "permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). A plaintiff alleging a hostile work environment must exhaust his administrative remedies by consulting an EEO counselor within 45 days of at least one event that is part of the hostile work environment. 29 C.F.R. § 1614.105(a)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002).

The only events Webster relies on within the 45-day time period are his failures to be selected for promotion. The court agrees with Defendant that notifications that Webster had not

been selected for promotions are not examples of severe intimidation, ridicule, or insult. Rather, they are discrete decisions that are independently actionable and that must be independently administratively exhausted. Discrete acts that a plaintiff relies on in support of discrimination or retaliation claims, such as failures to promote, are distinct from a hostile work environment claim, which "must be based on severe and pervasive discriminatory intimidation or insult." *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003); *Nurridin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005) ("[T]he bulk of the 'hostile' events on which plaintiff relies are the very employment actions he claims are discriminatory or retaliatory; he cannot so easily bootstrap discriminatory claims into a hostile work environment claim.") Webster, therefore, has failed to allege any act of intimidation, insult, or ridicule discriminating or retaliating against him during the 45-day period and his hostile work environment claim is untimely.

Accordingly, Webster's only timely raised claims are his failure to be selected as lead officer claim (Promotion No. 2069-2010) and his failure to be selected as supervisory officer claim (Promotion No. 2131-2010).

## 2. ADEA Claim

Defendant moves for summary judgment on Webster's claim of age-based discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"). The ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Webster bears the burden of establishing that age was a "determining factor" in the Salt Lake VAMC's decisions not to promote him. *Lucas v. Dover Corp.*, 857 F.2s 1397, 1400 (10th Cir. 1988).

Defendant does not dispute that the circumstances of Webster's timely claims meet the

criteria for a prima facie case under the ADEA. Webster was over 40 years of age when he applied for the promotions, he met the qualifications for the positions, he was not selected for the promotions, and younger applicants were selected.

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence that its actions were taken for legitimate, nondiscriminatory reasons. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-55 (1981); *Sandoval v. City of Boulder*, 388 F.3d 1312, 1321 (10th Cir. 2004). Once the defendant satisfies its burden of showing that its actions were taken for legitimate, nondiscriminatory reasons, the burden shifts back to the plaintiff to establish that the employer's explanation for the adverse action is a pretext for discrimination. *Burdine*, 450 U.S. at 253; *Sandoval*, 388 F.3d at 1321.

Defendant argues that it has met its burden of providing a legitimate, nondiscriminatory reason for not selecting Webster for either promotion and that Plaintiff has failed to rebut that reason by raising an inference of pretext. Police Chief Albert Bell was the deciding official for the positions Webster applied for in 2009. Bell believed that Webster was a skilled police officer but felt that he lacked the essential interpersonal skills. Several other officers involved in the selection process also testified that Webster lacked interpersonal skills.

The candidates for promotion were interviewed by panels of interviewers selected by Chief Bell. Each interviewer received a printed set of 15 interview questions, none of which related to age. The panel members asked each candidate the same 15 questions and independently rated the candidates' answers to each questions on a scale of 0-5. The scores were then totaled. For both promotions, the candidate Bell selected for the promotion was the candidate who received the highest total points from the panel. The court concludes that Defendant has met its burden of putting forth a legitimate, nondiscriminatory reason for its

employment actions.

Therefore, the burden shifts back to the plaintiff to establish that the employer's explanation is a pretext for discrimination. *Burdine*, 450 U.S. at 253. None of the interviewers testified that age was taken into consideration in their evaluation of the candidates. Webster, however, relies on a statement from fellow officer Anthony Auriemma to try to show that Bell had a discriminatory motive. Webster testified that Auriemma stated that Bell stated, when he arrived at the VAMC in March 2009, that he "wanted to replace all the older officers with younger officers." Auriemma testified that Bell's use of the term "older" did not refer to age, but referred to officers who were in the department when Bell arrived. Moreover, Bell allegedly made the statement not long after he joined to department, it was not made in connection with or at the time of the decision-making on either of the promotions Webster sought.

During discovery in this case, Webster also claims that he heard Bell tell a visitor from Hill Air Force base, where Bell had been previously employed, that he was "going to promote some more of his people as soon as he got rid of some of the older officers." Defendant claims that Webster's reliance on this statement is unavailing because Webster never mentioned this statement in his EEO Complaint, in the EEO discovery, in his EEO motions, in his Complaint in this case, or in response to written discovery in this case. Although Defendant contends that the court should disregard this allegation as an attempt to create a sham fact issue, the statement is no different than the statement Auriemma allegedly heard and the evidence in the record is that Bell used the term to refer to officers who were at the VAMC before he was hired. *See Franks v. Nimmo*, 96 F.2d 1230, 1237 (10th Cir. 1986) ("[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony.") Moreover, this

one ambiguous statement was not directed at Webster and was not stated in connection with the two promotions at issue.

Webster also attempts to use statistical information to support his claim of age discrimination. However, the comparison of ages between officers joining the department and those leaving the department, voluntarily and involuntarily, is of no relevance to Webster's claim. Moreover, by including voluntarily retiring officers, the statistics become meaningless. Bell was involved with the termination of only two officers during his tenure at the VAMC, a 29-year-old officer and a 49-year-old officer. This information does not provide a basis from which a reasonable jury could infer disparate treatment based on age.

Webster's burden is to produce evidence that establishes not only that the agency's decision-maker did not believe the reasons given for the challenged decisions, but also that the decision-maker's real reason was discriminatory. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). There is no evidence that Chief Bell's reason for not promoting Plaintiff was false. Even if Bell may have made a statement that he wanted to get rid of older officers, there is no evidence that Bell got rid of any of the older officers. Webster was not terminated. And, significantly, Bell did not make the statement in connection to the promotions in question and it does not undermine the fact that Bell relied on the highest score from the interview panel.

Webster claims that the individuals Bell selected to be on the interview panel did not like him, but there is no evidence that anyone on the interview panel did not like him based on his age. In fact, there is no evidence that the interview panel considered age at all. Therefore, the court concludes that Defendant is entitled to summary judgment as a matter of law on Webster's age discrimination claim.

### 3. Retaliation Claim

Defendant also moves for summary judgment on Defendant's retaliation claim, asserting that there is no evidence that Webster's failure to be promoted was based on his participation in protected activity. Federal employees are protected from retaliation for opposing a discriminatory employment practice or making a charge of discrimination. *Dossa v. Wynne*, 529 F.3d 911, 915 (10ᵗʰ Cir. 2008). To establish a prima facie case of retaliation under Title VII, the plaintiff bears the burden of showing "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

Defendant does not dispute that the circumstances of Webster's timely claims meet the criteria for a prima facie case of retaliation. Webster participated in an EEO proceeding on October 29, 2009, when he provided information to an EEO investigator in connection with fellow Officer Ryan Zumwalt's EEO complaint and he was not selected for the promotions he applied for in December 2009.

Because Webster's retaliation claim is based on the same promotion decisions as his age discrimination claim, Defendant relies on the same nondiscriminatory reasons for its selection of other candidates for the promotions that it relied on for purposes of the age discrimination claim. The court concludes that these reasons meet Defendant's burden of production for the retaliation claim as well. Therefore, the issue is whether Plaintiff has established that Defendant's explanation for the adverse action is a pretext for discrimination. *Burdine*, 450 U.S. at 253.

"To raise an inference of pretext in the face of the employer's legitimate,

nondiscriminatory explanation, the plaintiff must undermine the employer's credibility to the point that a reasonable jury could not find in its favor." *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005). A proffered reason is not pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515. "[A] plaintiff must produce evidence that the employer did more than get it wrong. He or she must come forward with evidence that the employer didn't really believe the proffered reasons for the action and thus may have been pursuing a hidden discriminatory agenda." *Id.*

Webster argues that he was more qualified than the officers who were selected for the promotions instead of him. However, the court must "proceed with caution when considering the relative merits of individual employees." *Jaramilo*, 427 F.3d at 1308. An employer can decide which qualifications are most important to it, and "it is not for the court . . . to assess which qualities should 'weigh[] more heavily' for an employer." *Pendleton v. Holder*, 697 F. Supp. 2d 12, 18 (D.D.C. 2010). To establish a discriminatory animus, a plaintiff must demonstrate that the disparity in the candidates' qualifications are so overwhelming that they "jump off the page and slap [the court] in the face." *Jaramillo*, 427 F.3d at 1309. Bell and other officers who were deposed did not dispute Webster's skills as an officer but felt he lacked the necessary interpersonal skills to lead other officers. The evidence Webster submits regarding the other officers' qualifications does not show that Webster's qualifications were overwhelmingly superior. The evidence from the interview panels show that the candidates selected responded well on the topics deemed important. The court cannot second-guess which characteristics an employer finds most valuable in certain leadership positions.

Webster also argues that Bell improperly influenced the interview panel but both Beard

and Vouvalis testified that neither Bell nor the VAMC management provided any input as to who should be selected. The panel members from outside the Va police department also testified that they were not influenced by Bell or anyone else. In addition, Webster claims that Bell selected panel members unfavorable to him, but there is no evidence that their opinions of him were unfavorable based on a retaliatory intent. The evidence demonstrates that there were many problems within the police department. But Webster has not demonstrated how any of those problems relate to retaliation against him for being interviewed with respect to another officer's EEO Complaint. Even if some of the members on the interview panel did not select Webster based on personal animus or retaliation, it is not enough unless Webster ties the retaliation to his participation in protected activity.

Defendant argues that Webster cannot establish a retaliatory basis for Defendant's failure to promote him because Bell testified that he did not know that Webster had been interviewed by the EEO investigator for Officer Zumwalt's EEO complaint. Webster claims, however, that Bell should have known everyone who was interviewed in connection with the complaint. Bell could not have retaliated against Webster for something he was not aware of at the time he made the promotion decisions. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("In order to prevail, Raad must present evidence from which a reasonable trier of fact could conclude that the school principals who refused to hire her were aware that she had engaged in protected activity."); *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000) ("The critical issue here, however, is whether the person who made the decision to terminate [plaintiff's] employment was aware of the discrimination allegations at the time, because absent such knowledge [plaintiff] lacks a causal link between the termination and the complaint of discrimination."). However, even if the court assumes that Bell knew that Webster was

interviewed in connection with the other officer's EEO Complaint, Webster has not shown that Bell knew anything about what Webster said in connection with the complaint. Therefore, there is no evidence that Bell knew that there was anything Webster had said that he would retaliate against.

Moreover, Webster claims that Bell started retaliating against him prior to his protected activity, which is clearly not possible. Webster claims that Bell retaliated against him for complaints Webster filed between 2003 and 2007 before Bell worked at the Salt Lake VAMC. There is no evidence that complaints filed while Bell was not working at the VAMC played any role in Bell's decision. Moreover, Webster's prior complaints did not allege violations of the ADEA or Title VII. Therefore, the court concludes that Webster has not produced evidence that would allow a reasonable jury to conclude that Defendant's reasons for not selecting him for promotion were pretext for discrimination. Accordingly, the court grants Defendant's motion for summary judgment on Webster's retaliation claim.

## 4. Hostile Environment Claim

To the extent the Webster's hostile work environment claim could be considered timely the court concludes that he has not demonstrated that a rational jury could find that his workplace "was permeated with discriminatory intimidation, ridicule, and insult," that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Sandoval*, 388 F.3d 1326-27. A plaintiff must show more than just a working environment that he considers hostile. He must establish that he was targeted for harassment because of his protected status. *Id.* Webster has not shown that he was subjected to severe and offensive conduct based on his age or his EEO participation. Webster's claims fall short of the intimidation, ridicule, and insult tied to age and protected activity that is necessary to

prove a claim. Therefore, even if the hostile work environment claim could be considered timely, the court concludes that Defendant is entitled to summary judgment.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED. Because this order disposes of all the claims at issue in the case, the Clerk of Court is directed to enter judgment in favor of Defendant and close the case. Each party shall bear his own fees and costs.

DATED this 28th day of June, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge